994 A.2d 573 (2010)
413 N.J. Super. 276
Marcello BUSTAMANTE, Plaintiff-Appellant,
v.
BOROUGH OF PARAMUS, Police Department of the Borough Of Paramus, Douglas Ehrenberg, Robert Gleason, Chris Tsentas, Michael Cebulski, Craig McEllen, Individually and as Agents for the Borough of Paramus Police Department, Defendants-Respondents.
DOCKET NO. A-1869-08T2.
Superior Court of New Jersey, Appellate Division.
Argued December 15, 2009.
Decided May 7, 2010.
*575 Leonard S. Miller, Fair Lawn, argued the cause for appellant (Leonard S. Miller, P.A., attorneys; Leslie E. Rice, on the brief).
Ruby Kumar-Thompson argued the cause for respondent Douglas Ehrenberg (Thomas B. Hanrahan & Associates, attorneys; Mr. Hanrahan, of counsel and on the brief; Ms. Kumar-Thompson, on the brief).
Zisa & Hitscherich, attorneys for respondent Chris Tsentas (Robert J. Hitscherich, Hackensack, on the brief).
Breslin & Breslin, P.A., Hackensack, attorneys for respondent Borough of Paramus and Police Department of Borough of Paramus; Ganz & Sivin, LLP, attorneys for respondent Robert Gleason; Law Offices of John L. Schettino, attorneys for respondent Michael Cebulski; and Carl M. Losito, Weehawken, attorney for respondent Craig McEllen, join in the brief of respondent Douglas Ehrenberg.
*576 Before Judges GRALL, MESSANO and LeWINN.
The opinion of the court was delivered by
MESSANO, J.A.D.
Plaintiff Marcello Bustamante appeals from the dismissal of his complaint with prejudice for "failure to state a claim upon which relief can be granted," Rule 4:6-2(e), and the denial of his motion to amend the complaint. We have considered the arguments raised in light of the record and applicable legal standards. We affirm the denial of plaintiff's motion to amend his complaint; we reverse the dismissal of the complaint with prejudice, and remand the matter to the trial court for further proceedings consistent with this opinion.

I.
On the evening of January 31 and into the early morning hours of February 1, 2006, plaintiff and his friend, Konstadinos Peppas, were at Houlihan's Restaurant in Paramus. The manager of the restaurant summoned the police, claiming the men were both "heavily intoxicated[] and acting up." When police arrived, they confronted the two men. A struggle ensued and plaintiff was ultimately arrested.
On August 29, 2006, the Bergen County grand jury indicted plaintiff and Peppas for two counts of fourth-degree aggravated assault on a police officer, N.J.S.A. 2C:12-1(b)(5)(a), and one count of third-degree resisting arrest, N.J.S.A. 2C:29-2(a)(3)(a).[1] The victims of the assaults were alleged to be Paramus police officers, Douglas Ehrenberg, in one count, and Craig McEllen in the other. The indictment also named Paramus police officers "R. Gleason," "C. Tsentas," and "Michael Cebulski" as those whose arrest plaintiff resisted.
During preliminary proceedings in the criminal case, plaintiff sought access to the personnel files of the five officers, indicating that he intended to assert "as a defense to the charges[,] ... both self-defense and resistance to excessive force...." On January 2, 2007, plaintiff appeared in Superior Court, and, pursuant to a plea bargain reached with the State, was prepared to plead guilty to the disorderly persons offense of resisting arrest as amended, N.J.S.A. 2C:29-2(a)(1); the other charges were to be dismissed. Plaintiff intended to apply to the Pre-Trial Intervention Program (PTI), however, and defense counsel, the prosecutor, and the judge noted that PTI was unavailable if plaintiff pled guilty to a disorderly persons offenses. See Pretrial Intervention Programs, Pressler, Current N.J. Court Rules, comment on R. 3:28, Guideline 2 at 1063 (2010) ("Any defendant accused of crime shall be eligible for admission into a PTI program.") (emphasis added); see also State v. Motley, 369 N.J.Super. 314, 320, 848 A.2d 875 (App.Div.2004) ("PTI is a diversionary program designed to `augment the options of prosecutors in disposing of criminal matters....'") (quoting State v. Brooks, 175 N.J. 215, 223, 814 A.2d 1051 (2002) (emphasis added)).
As a result, defendant entered a guilty plea to fourth-degree resisting arrest as amended. See N.J.S.A. 2C:29-2(a)(2) ("[A] person is guilty of a crime of the fourth degree if he, by flight, purposely prevents or attempts to prevent a law enforcement officer from effecting an arrest."). In response to questioning by his attorney, plaintiff admitted that he had "attempted to prevent [his] lawful arrest by officers that had entered th[e] restaurant."[2] The *577 judge explained that if plaintiff was "thrown out of PTI," he would be placed on probation pursuant to the plea bargain. Defendant entered the PTI program, a one-year "order of postponement" of the criminal charges was filed, plaintiff successfully completed PTI, and the indictment was dismissed on February 29, 2008.
On March 26, 2007, plaintiff filed his complaint against defendants Borough of Paramus, Police Department of the Borough of Paramus, police officers Ehrenberg, McEllen, Cebulski, Robert Gleason, and Chris Tsentas (collectively, defendants). In the first count, plaintiff claimed defendants had committed an "assault and battery[,]" further alleging that the "attack... continued while [he] was handcuffed and in police custody." In count two, plaintiff alleged defendants "act[ed] under color of law" in violation of 42 U.S.C. § 1983. He sought damages and counsel fees.
Discovery ensued. On July 31, 2008, prior to the discovery end date, Cebulski moved for summary judgment claiming that he had not been present at the scene of plaintiff's arrest. The motion was supported by a document, the Paramus Police Department's "Initial General Complaint Report." Cebulski also referenced the deposition testimony of Tsentas and McEllen wherein they claimed Cebulski was not present.
On August 19, plaintiff filed opposition and cross-moved to amend the complaint. In opposition to Cebulski's motion, plaintiff cited McEllen's grand jury testimony in which he had identified Cebulski as being present. He also cited the deposition testimony of Peppas and Houlihan's manager, both of whom indicated that at least five officers responded to the restaurant. He claimed this evidence raised a factual dispute regarding Cebulski's involvement; thus, summary judgment should be denied.
In support of his motion to amend, plaintiff claimed the Initial General Complaint Report "was never previously identified during the discovery period." In that report, police officer Robert Von Schalscha was named as having been present at Houlihan's on the night of plaintiff's arrest; plaintiff's motion sought to add Von Schalscha as a defendant. Defendants opposed the motion to amend, arguing that plaintiff could have discovered Von Schalscha's name through the exercise of "due diligence," and, since the statute of limitations had now expired, the proposed amendment was time-barred.
On September 10, 2008, before these motions were heard, Ehrenberg moved to dismiss plaintiff's complaint for failure to state a claim. See R. 4:6-2(e). In essence, Ehrenberg argued that plaintiff's complaint was legally barred in light of his entry into PTI. Plaintiff opposed the motion.
On October 10, 2008, after hearing oral argument from all parties on the pending motions, the judge denied plaintiff's motion for leave to amend the complaint, concluding that plaintiff had not utilized the fictitious party rule, Rule 4:26-4, had produced "no evidence of diligent inquiry," and the statute of limitations had expired.
The judge granted Ehrenberg's motion to dismiss the complaint for failure to state a claim, citing Heck v. Humphrey, 512 U.S. 477, 486-87, 114 S.Ct. 2364, 2372, 129 *578 L.Ed.2d 383, 394 (1994), and other cases, the principles of which he summarized as follows:
[I]f ... plaintiff has taken steps that are not compatible with [his] demand for remedies under the Constitution, 42 [U.S.C. § ] 1983, and are not compatible with the common-law, then the plaintiff is either estopped or barred from pursuing those remedies.
The idea behind it is that if there is an impugnment [sic] ... or the creation of something that would suggest conflicting resolutions of the underlying transaction, the Court will not allow it.
The judge reasoned that plaintiff's "entry into PTI" and his "submission to the unfavorable circumstances of PTI" barred his civil claims against defendants as a matter of law. He further determined that plaintiff's factual allegations were all contained within a "bundle of facts ... wrapped up in and around the same sequence of events from start to finish at Houlihan's." He concluded, "it would be inconsistent for the judiciary to permit these civil claims [based upon those facts] to proceed" after plaintiff's completion of PTI.
Although he did not specifically rule on Cebulski's motion for summary judgment and no order was entered, the judge noted that he "would have denied" the motion because there were genuine issues of disputed material fact as to whether Cebulski was present.
Plaintiff's motion for reconsideration was denied by order dated November 21, 2008. After plaintiff filed his notice of appeal, the judge entered a consent order clarifying his earlier order, and noting that the order dismissing plaintiff's complaint had "resulted in a complete disposition of all claims as to all parties."

II.
Plaintiff argues that the judge "misapplied case law and wrongfully dismissed" his claims. He further contends that the judge should have permitted the amendment of his complaint because he was unaware of Von Schalscha's alleged involvement, he exercised due diligence throughout the discovery period, and no undue prejudice or delay would result from the amendment.
Defendants argue that the complaint was properly dismissed. They contend that all of plaintiff's claims were legally barred not only by his guilty plea to resisting arrest, but also by his entry into PTI. They further argue that since the statute of limitations had expired as to both plaintiff's § 1983 and common law claims, the judge properly denied his motion to amend the complaint.[3]
The issue presented is one of first impression in this State. Specifically, we are asked to consider whether plaintiff's civil complaint for damages under the common law and § 1983 is barred as a matter of law because of his guilty plea to resisting arrest, and the subsequent dismissal of that charge as well as the two counts of aggravated assault, as a result of his entry into PTI.
In Heck, supra, the Supreme Court decided "whether a state prisoner may challenge the constitutionality of his conviction *579 in a suit for damages under 42 U.S.C. § 1983." 512 U.S. at 478, 114 S.Ct. at 2368, 129 L.Ed.2d at 389. The plaintiff, who had been convicted of voluntary manslaughter in state court, alleged that the defendant state officials violated § 1983 by "engag[ing] in an `unlawful, unreasonable, and arbitrary investigation' leading to [his] arrest; `knowingly destroyed' evidence `which was exculpatory in nature and could have proved [his] innocence'; and caused `an illegal and unlawful voice identification procedure' to be used at [his] trial." Id. at 479, 114 S.Ct. at 2368, 129 L.Ed.2d at 389.
The Court likened the plaintiff's § 1983 claims to "[t]he common-law cause of action for malicious prosecution...." Id. at 484, 114 S.Ct. at 2371, 129 L.Ed.2d at 392. "One element that must be alleged and proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused." Id. at 484, 114 S.Ct. at 2371, 129 L.Ed.2d at 393 (citations omitted). The Court then held that if convicted of the underlying crime,
a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.
[Id. at 486-87, 114 S.Ct. at 2372, 129 L.Ed.2d at 394.]
In the Third Circuit, the holding in Heck has been expanded so as to bar § 1983 claims even when the underlying criminal charges have not resulted in conviction. In Gilles v. Davis, 427 F.3d 197, 201 (3d Cir.2005), the court considered "whether resolution of a criminal charge under Pennsylvania's 'Accelerated Rehabilitative Disposition' [ARD] program bars a subsequent § 1983 claim." There, the plaintiff, "Petit[,] was charged with resisting arrest, disorderly conduct, and failure of disorderly persons to disperse," for his role in videotaping a provocative evangelical message his cohort, Gilles, delivered to a crowd on the campus of Indiana University in Pennsylvania. Id. at 201-02. "Petit entered into the [ARD] program, which permit[ted] expungement of the criminal record upon successful completion of a probationary term." Id. at 202. Petit sought relief under § 1983, declaring that university officials had violated his First Amendment rights, as well as punitive damages, and the return of his confiscated videotape. Id. at 203.
The court noted that under the rules governing Pennsylvania's ARD program,
acceptance into [the] ARD program is not intended to constitute a conviction, but it may be statutorily construed as a conviction for purposes of computing sentences on subsequent convictions. By entering the ARD program, the defendant waives his right to prove his innocence, but at the same time, does not admit guilt.
[Gilles, supra, 427 F.3d at 209 (quotations and citations omitted).]
The court reasoned that "Petit c[ould] not maintain a § 1983 claim unless successful completion of the ARD program constitute[d] a termination of the prior criminal proceeding in favor of the accused." Id. at 210 (quotation and citation omitted). The court then examined a number of district court decisions from Pennsylvania that held entry into ARD precluded subsequent federal civil rights claims, and the decisions of two circuit courts that held the alternative disposition programs in other states similarly precluded federal civil *580 rights claims.[4]Gilles, supra, 427 F.3d at 210-11. The court concluded that "the ARD program [wa]s not a favorable termination under Heck. Petit's participation in the ARD program bar[red] his § 1983 claim." Id. at 211-12 (footnotes omitted).
There exists, however, a split among the circuit courts regarding application of the Heck bar to situations where the underlying criminal charges did not result in any conviction. In Taylor v. Gregg, 36 F.3d 453, 455-57 (5th Cir.1994) (en banc), overruled on other grounds, Castellano v. Fragozo, 352 F.3d 939, 949 (5th Cir.2003), the Fifth Circuit held that the plaintiffs' false arrest and malicious prosecution claims were legally barred in light of their participation in a federal pre-trial diversion program. See also DeLeon v. City of Corpus Christi, 488 F.3d 649, 656 (5th Cir.2007) (concluding a plea of guilty, followed by a pending "deferred adjudication" that would ultimately lead to dismissal of the criminal charges, was nevertheless "a conviction for the purposes of Heck's favorable termination rule."). In Roesch v. Otarola, 980 F.2d 850, 852 (2d Cir.1992), a case decided before Heck and cited by the Gilles court, the Second Circuit held that "a [§ ] 1983 claim sounding in malicious prosecution, false arrest, or unjust imprisonment ... [was legally barred by] a disposition pursuant to Connecticut's accelerated pretrial rehabilitation statute...."
However, in McClish v. Nugent, 483 F.3d 1231, 1251 (11th Cir.2007), considering whether the plaintiff's excessive force complaint was barred after his successful completion of Florida's PTI program and dismissal of the criminal charges, the court concluded "Heck [wa]s inapposite." The court observed:
The issue is not, as the district court saw it, whether [the plaintiff]'s participation in PTI amounted to a favorable termination on the merits. Instead, the question is an antecedent onewhether Heck applies at all since [the plaintiff] was never convicted of any crime.
[Ibid.]
Although not binding upon us, we find the Third Circuit's interpretation of Heck to be persuasive. See Young v. Prudential Ins. Co. of Am., 297 N.J.Super. 605, 622, 688 A.2d 1069 (App.Div.1997) ("[I]nterpretation of federal law by federal courts may be persuasive in a given case, and `should be accorded due respect'; nevertheless, such rulings, other than by the United States Supreme Court, are not binding upon a state appellate court.") (quoting Dewey v. R.J. Reynolds Tobacco Co., 121 N.J. 69, 79-80, 577 A.2d 1239 (1990)), certif. denied, 149 N.J. 408, 694 A.2d 193 (1999); see also Glukowsky v. Equity One, Inc., 180 N.J. 49, 64, 848 A.2d 747 (2004) ("[T]he principle of comity instructs state courts to give due regard to a federal court's interpretation of a federal statute.") (citing Dewey, supra, 121 N.J. at 80, 577 A.2d 1239), cert. denied, 543 U.S. 1049, 125 S.Ct. 864, 160 L.Ed.2d 770 (2005). Our federal district court has held that dismissal of criminal charges through PTI is not a favorable disposition for purposes of a malicious prosecution suit brought under § 1983. Lindes v. Sutter, 621 F.Supp. 1197, 1201-02 (D.N.J.1985). We have reached the same conclusion regarding similar state claims. See Rubin v. Nowak, 248 N.J.Super. 80, 83, 590 A.2d 249 (App. Div.1991) (citing Lindes, supra, 621 F.Supp. at 1201; Thomas v. N.J. Inst. of Tech., 178 N.J.Super. 60, 62, 427 A.2d 1142 (Law Div.1981)).[5] Nor is completion of *581 PTI a favorable result entitling a plaintiff to reimbursement of counsel fees pursuant to N.J.S.A. 18A:16-6.1.[6]Cressinger v. Bd. of Educ. of Newark, 256 N.J.Super. 155, 156, 606 A.2d 849 (App.Div.), certif. denied, 130 N.J. 394, 614 A.2d 617 (1992).
Indeed, the rules governing our PTI program bear striking similarity to those applicable to the ARD program that was considered in Gilles. For example, the official comment to Rule 3:28, Pressler, supra, Guideline 5 at 1068, states that "[t]he essential PTI format is to give participating defendants a true second chance to accomplish rehabilitation or to show otherwise that criminal conduct is not likely to occur in the future; and if the defendant fails in this effort, to return him or her to ... ordinary prosecution...." The comment to Guideline 1(d) provides that "[t]he deterrence of criminal behavior in many cases requires intensive work" and notes that PTI contemplates imposing on program participants such restrictions as "counseling, psychotherapy, drug-abuse prevention and control, employment placement." Pressler, supra, R. 3:28, Guideline 1(d), at 1062. These restrictions are very similar to the "judicially imposed limitations on freedom" discussed by the Gilles court in evaluating Pennsylvania's ARD program. Gilles, supra, 427 F.3d at 211.
Although the federal courts have not considered in a published opinion the precise symmetry between PTI and ARD for purposes of analyzing § 1983 claims, at least one unpublished opinion from New Jersey's District Court has concluded that the two programs are without significant difference. In Hendrix v. City of Trenton, 2009 WL 5205996, at *1, 2009 U.S. Dist. LEXIS 120718, at *2 (D.N.J. Dec. 29, 2009), the court considered "whether Heck... applie[d] to bar [p]laintiff's claims when [p]laintiff had resolved his criminal charges by participating in [PTI]."[7] Finding "[t]he similarities between the ARD and the PTI [to be] striking[,]" id. at *4, 2009 U.S. Dist. LEXIS 120718, at *14, the court concluded that the "[p]laintiff's attempt to distinguish the ARD and PTI programs [must] fail[]." Id. at *4, 2009 U.S. Dist. LEXIS 120718, at *15. Further concluding that "the policy purpose and procedural similarities between the ARD and the PTI" made the reasoning in Gilles *582 "equally applicable" to the case at hand, "the [c]ourt h[e]ld[] that participation in New Jersey's PTI program does not meet the favorable termination requirement of Heck, consistent with the holding of Gilles." Id. at *5, 2009 U.S. Dist. LEXIS 120718, at *17.
While the holding in Hendrix is not binding upon us, we are persuaded by its reasoning that for purposes of analyzing § 1983 claims, plaintiff's entry into PTI cannot be seen as a favorable disposition under Heck and Gilles. However, plaintiff specifically argues that for other reasons, "Gilles is inapplicable to the situation presented in this case." We agree and conclude that plaintiff's claims are not barred as a matter of law as a result of the criminal proceedings; therefore, defendants' motion to dismiss was improvidently granted. This is so because under the facts alleged, regardless of how the criminal charges were terminated, the claims in plaintiff's civil action may "not be inconsistent with a holding that the officers, during a lawful arrest, used excessive (or unlawful) force in response to [a plaintiff's] own unlawful actions." Lora-Pena v. F.B.I., 529 F.3d 503, 506 (3d Cir.2008).
We begin by recognizing that while the Heck court painted with a broad brush, it nonetheless recognized exceptions to its holding that depended upon the individual facts presented. It noted, for example, that even if the underlying criminal conviction was "unimpaired,"
when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.
[Heck, supra, 512 U.S. at 487, 114 S.Ct. at 2372-73, 129 L.Ed.2d at 394. (footnote omitted).][8]
The Third Circuit specifically recognized this limitation in Nelson v. Jashurek, 109 F.3d 142 (3d Cir.1997). We quote the facts presented there as set forth in the opinion because they mirror those presented by plaintiff in this case:
According to [the plaintiff]'s complaint, he disobeyed [the officer]'s orders to halt and instead ran away. [The officer] pursued and caught [the plaintiff], and a struggle ensued. [The plaintiff] claims that he then sat down and that when he later got up from the chair, [the officer] beat him with a flashlight and used excessive and malicious force to subdue him. [The plaintiff] asserts that he sustained physical and psychological injuries as a result of [the officer]'s actions.
[Id. at 144.]
The plaintiff was ultimately convicted of resisting arrest, and "that ... conviction [wa]s unimpaired." Ibid.
After analyzing state criminal law regarding the charge of resisting arrest, id. at 145, the court concluded that "a finding that [the officer] used excessive `substantial *583 force' would not imply that the arrest was unlawful and thus the Supreme Court's example of how Heck ... can bar a civil action is not applicable here." Ibid. The court continued:
Rather, we believe that the Supreme Court intended to demonstrate that a civil suit for an unreasonable seizure predicated on a false arrest would be barred so long as a conviction for resisting the same arrest remained unimpaired. But this case is different because [the plaintiff] does not charge that [the officer] falsely arrested him. Instead, [the plaintiff] charges that [the officer] effectuated a lawful arrest in an unlawful manner.
[Id. at 145-46.]
Thus, a plaintiff's § 1983 claim for excessive force is only barred under the rationale in Heck if a potential verdict in the civil cause "would be inconsistent with [the plaintiff's] conviction." Id. at 146.
The Third Circuit and the federal District Court of New Jersey have consistently followed Nelson's limitation upon the broad application of the Heck defense to § 1983 claims of the use of excessive force in an arrest. In Lora-Pena, supra, 529 F.3d at 506, the court reversed the dismissal of the plaintiff's complaint, concluding that his "convictions for resisting arrest and assaulting federal officers [did not] bar[] his civil suit at the Rule 12(b)(6) stage." In Ference v. Township of Hamilton, 538 F.Supp.2d 785, 804-05 (D.N.J. 2008), the court refused to apply Heck on summary judgment to bar the plaintiff's § 1983 excessive force claims despite his prior conviction for "`[i]nterference with police officer'" pursuant to a municipal ordinance. And in Gravely v. Speranza, 408 F.Supp.2d 185, 189 (D.N.J.2006), cert. denied, 552 U.S. 1054, 128 S.Ct. 686, 169 L.Ed.2d 536 (2007), although the court granted summary judgment on the facts presented, it noted that "Heck does not serve as a complete bar to all civil rights claims related to a prisoner's arrest."[9]
Other circuits have agreed that a plaintiff's § 1983 claim is not barred as a matter of law despite an unimpaired criminal conviction when the allegations, if proven, do not serve to invalidate the underlying conviction. Dyer v. Lee, 488 F.3d 876, 881 (11th Cir.2007), noted:
Other courts [that] have addressed the applicability of Heck in situations similar to the instant case have emphasized the importance of logical necessity and the limited scope of the Heck holding. See, e.g., Thore v. Howe, 466 F.3d 173, 180 (1st Cir.2006) ("A § 1983 excessive force claim brought against a police officer that arises out of the officer's use of force during an arrest does not necessarily call into question the validity of an underlying state conviction [of assault on a police officer] and so is not barred by Heck."); VanGilder v. Baker, 435 F.3d 689, 692 (7th Cir.2006) (holding that a successful § 1983 suit for excessive force would not imply the invalidity of the underlying conviction for resisting a law enforcement officer); Smith v. City of Hemet, 394 F.3d 689, 698 (9th Cir.2005) (en banc) (holding that Heck does not bar § 1983 suit because conviction for resisting arrest could stand based on pre-arrest acts of resistance, and thus the fact that arrest may have been unlawful due to excessive force did not *584 negate the underlying conviction); Sanford v. Motts, 258 F.3d 1117, 1119 (9th Cir.2001) (holding that Heck does not bar § 1983 suit because record did not clearly establish whether excessive force took place during, or after, the arrest); Martinez v. City of Albuquerque, 184 F.3d 1123, 1125 (10th Cir.1999) (holding that Heck does not bar § 1983 suit because the record did not rule out that plaintiff could have been convicted for offenses prior to arrest, and that, even if he were not, jury could find under New Mexico law that "police officers effectuated a lawful arrest ... in an unlawful manner," thus not negating underlying conviction)....[10]
We distill from these cases that if plaintiff's proofs regarding the alleged § 1983 violation do not seek to invalidate any element of the underlying criminal conviction, the complaint is not barred as a matter of law by Heck. The same result should apply where, as here, the underlying criminal charges were dismissed via successful completion of PTI.
The Second Circuit has applied this rationale in a case decided after Roesch and Heck. In Johnson v. Bax, 63 F.3d 154, 156 (2nd Cir.1995), the court reversed summary judgment dismissing the plaintiff's claims under § 1983 for First Amendment violations, despite his admittance into New York's diversionary "`adjournment in contemplation of dismissal'" program on the underlying criminal charges. Without mention of Heck, the court distinguished its earlier decisions, including Roesch, finding that they "ha[d] no application to [the plaintiff's] cause of action, ... [because] the favorable termination of a criminal proceeding [wa]s not an essential element of an independent First Amendment claim." Id. at 159.
We find the rationale expressed in Hendrix, which focuses on the relationship between the elements of the § 1983 claim and the underlying criminal violation, to be persuasive in this regard, particularly because the facts of that case are quite similar to those presented here. In Hendrix, supra, the plaintiff was indicted for aggravated assault upon a police officer, and resisting arrest; the indictment was dismissed after the plaintiff successfully completed PTI. 2009 WL 5205996, at *2, 2009 U.S. Dist. LEXIS 120718, at *6. The plaintiff filed a civil suit, alleging common law assault by the police officer, and a violation of § 1983. Ibid.
Considering the issue in response to the defendants' motion to dismiss for failure to state a claim, Fed.R.Civ.P. 12(b)(6), "the court ... construe[d] the allegations in [the] [p]laintiff's [c]omplaint as true only insofar as they d[id] not undermine the basis of [the] [p]laintiff's charges resolved through the PTI program...." Hendrix, supra, 2009 WL 5205996, at *2, 2009 U.S. Dist. LEXIS 120718, at *7-8. The court further noted:
While [the plaintiff's] participation in the PTI program did not terminate the underlying criminal charges in a favorable manner, the inquiry as to whether Heck bars [the plaintiff]'s § 1983 action does not end [t]here. The [c]ourt must still determine "if a favorable judgment on [this] § 1983 damages claim would necessarily *585 imply the invalidity of the plaintiff's conviction."
[Id. at *5, 2009 U.S. Dist. LEXIS 120718, at *17 (quoting Jennings v. Fetterman, 197 Fed.Appx. 162, 164 (3d Cir. 2006)).].
After considering the elements of aggravated assault and resisting arrest under New Jersey law, the Hendrix court concluded that the plaintiff's complaint was not barred as a matter of law. Supra, 2009 WL 5205996, at *7-8, 2009 U.S. Dist. LEXIS 120718, at *23-24. It explained its reasoning as follows:
[I]n certain factual circumstances Heck does not bar a plaintiff's excessive force claim against the arresting officer, even when that plaintiff had pled guilty to, or was convicted of, assault.... The rationale... is that at the time the officer allegedly had applied unreasonable or excessive force, the plaintiff was already subdued by the officer. Despite the plaintiffs having physically provoked the officer first, ... courts [have] found that the officer's assaultive behavior may have been excessive or gratuitous because these plaintiffs were no longer a threat to the officers' safety.
[Ibid.]
The court concluded, "even if [the plaintiff] did use force on [the officer] during his arrest, it would not invalidate his disposition through the PTI program because a jury can still find that [the officer] used excessive force on [the plaintiff] while effectuating his arrest." Id. at *12, 2009 U.S. Dist. LEXIS 120718, at *38. Nor were the "[p]laintiff's allegations of excessive force after he was arrested ... inconsistent with his assault charge." Ibid.[11]
Returning to the issues before us, plaintiff pled guilty to resisting arrest as a fourth-degree offense. That presumptively established that plaintiff knew defendants were law enforcement officers, that they were effectuating his arrest, that he purposely prevented, or attempted to prevent, his arrest, and, fearing his arrest, fled. See State v. Simms, 369 N.J.Super. 466, 470-72, 849 A.2d 573 (App.Div.2004) (defining elements of the crime); see also Model Jury Charge (Criminal), "Resisting ArrestFlight Alleged" (2007). However, "a person may resist excessive force used by the arresting officer, even if the arrest is otherwise legal." Cannel, New Jersey Criminal Code Annotated, comment 10 on N.J.S.A. 2C:3-4 (2009) (citing State v. Mulvihill, 57 N.J. 151, 156-57, 270 A.2d 277 (1970)); see also Simms, supra, 369 N.J.Super. at 472, 849 A.2d 573 ("[A]n officer effecting an arrest may use only such force as is reasonable under the circumstances....").
By pleading guilty, however, plaintiff forfeited any claim that defendants used excessive force in effecting his arrest. See ibid. ("[I]f the officer uses excessive or unnecessary force `the citizen may respond or counter with the use of reasonable force to protect himself ....'") (quoting Mulvihill, 57 N.J. at 156, 270 A.2d 277); see also Model Jury Charge (Criminal), "JustificationSelf Defense Resisting Arrest" (1988) (making the defense available only if the officer used unlawful force to effectuate the arrest). Thus, to the extent plaintiff's claims involved defendants' use of *586 force in effectuating his arrest, as opposed to after he was in custody, they are barred because a favorable outcome in the civil action would be inconsistent with the admissions he made by pleading guilty.
Although plaintiff never made any admissions regarding the aggravated assault charges, which were ultimately dismissed via PTI, the same reasoning must apply. While an actor has a right under our Criminal Code to use force to defend himself, the use of force is justified only if he "reasonably believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force...." N.J.S.A. 2C:3-4(a) (emphasis added); Simms, supra, 369 N.J.Super. at 472, 849 A.2d 573. When he pled guilty to resisting arrest, plaintiff was acknowledging that defendants did not use unlawful force during the actual arrest.
While the motion judge found that plaintiff's claims arose from a "bundle of facts ... wrapped up in and around the same sequence of events from start to finish at Houlihan's[,]" we cannot discern how he reached that conclusion. Plaintiff's complaint specifically alleged that defendants' "attack ... continued while [he] was handcuffed and in police custody."[12]
Defendants' motion did not seek summary judgment. Rather defendants argued that the complaint failed to state a claim in light of what transpired during the criminal prosecution. In considering the motion, the judge was obligated, therefore, to consider only "whether a cause of action [wa]s `suggested' by the facts." Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746, 563 A.2d 31 (1989) (quoting Velantzas v. Colgate-Palmolive Co., 109 N.J. 189, 192, 536 A.2d 237 (1988)). That "inquiry is limited to examining the legal sufficiency of the facts alleged on the face of the complaint." Printing Mart, supra, 116 N.J. at 746, 563 A.2d 31 (citing Rieder v. Dep't of Transp., 221 N.J.Super. 547, 552, 535 A.2d 512 (App.Div.1987)). "For purposes of analysis plaintiff[ ][was] entitled to every reasonable inference of fact." Printing Mart, supra, 116 N.J. at 746, 563 A.2d 31 (citing Indep. Dairy Workers Union v. Milk Drivers Local 680, 23 N.J. 85, 89, 127 A.2d 869 (1956)).
Applying these standards to the case at hand, we agree with plaintiff that his guilty plea to resisting arrest, and his subsequent entry into PTI, did not necessarily present a legal bar to his pursuit of civil remedies under the common law. In other words, to the extent plaintiff claimed defendants used unlawful force by continuing to attack him after he was in custody, his "action, ... if successful, w[ould] not demonstrate the invalidity of any outstanding criminal judgment against" him. Heck, supra, 512 U.S. at 487, 114 S.Ct. at 2372, 129 L.Ed.2d at 394. As a result, his "action should [have] be[en] allowed to proceed...." Ibid. (footnote omitted).[13]
*587 The same reasoning applies to plaintiff's § 1983 claim. For such purposes, a claim of "excessive force in the course of an arrest is properly analyzed under the Fourth Amendment...." Abraham v. Raso, 183 F.3d 279, 288 (3d Cir.1999) (citing Graham v. Connor, 490 U.S. 386, 393-94, 109 S.Ct. 1865, 1870-71, 104 L.Ed.2d 443 (1989)). As the Court has explained,
Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest ... necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it. Because [t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.
[Graham, supra, 490 U.S. at 396, 109 S.Ct. at 1871-72, 104 L.Ed.2d at 455 (quotations and citations omitted).]
Thus, in considering whether plaintiff's § 1983 claim was insufficient as a matter of law, the motion judge was obligated to credit his allegation that defendants continued to attack him after he was in custody. Whether that alleged conduct was reasonable under the "totality of the circumstances," is a question that could not be resolved on a motion brought pursuant to Rule 4:6-2(e). Accord Nelson, supra, 109 F.3d at 145-46; Ference, supra, 538 F.Supp.2d at 804-05.
In conclusion, since plaintiff's complaint was dismissed by the motion judge as a matter of law based upon Heck and Gilles, we reverse the order and remand the matter to the trial court. We hasten to add that we express no opinion about the ultimate merits of plaintiff's claims. We only hold that as defendants' motion sought relief under Rule 4:6-2(e), dismissal was improper.

III.
Finally, we affirm the judge's denial of plaintiff's motion to amend his complaint. Consideration of such a motion "rests in the ... sound discretion" of the motion judge. Notte v. Merchs. Mut. Ins. Co., 185 N.J. 490, 501, 888 A.2d 464 (2006) (quotation and citation omitted). "Th[e] exercise of [such] discretion requires a two-step [analysis]: whether the non-moving party w[ould] be prejudiced[;] and whether the amendment would ... be futile"that is, whether the claim as amended would nevertheless fail, thus making amendment a useless endeavor. Ibid. In this case, the judge did not mistakenly exercise his discretion by denying the motion because the amendment seeking to add Von Schalscha was time-barred by the statute of limitations. See N.J.S.A. 2A:14-2; Cowell v. Palmer Twp., 263 F.3d 286, 291 (3d Cir.2001) (noting § 1983 actions in New Jersey are governed by a two-year statute of limitations).
Plaintiff admittedly never utilized the fictitious party rule, Rule 4:26-4. "The purpose of th[at] rule is to render timely the complaint filed by a diligent plaintiff, who is aware of a cause of action against an identified defendant but does not know the defendant's name." Greczyn v. Colgate-Palmolive, 183 N.J. 5, 11, 869 *588 A.2d 866 (2005) (citation omitted) (emphasis added). A plaintiff cannot use the rule to add a belated claim of liability against a defendant not named in a timely fashion. As Judge Pressler explained,
[The Rule] does not apply if the plaintiff has properly designated some defendants by fictitious names and then later discovers a cause of action against undescribed defendants whom he then seeks to join.
[Pressler, supra, comment 1 on R. 4:26-4 (citing Gallagher v. Burdette-Tomlin Hosp., 318 N.J.Super. 485, 492, 723 A.2d 1256 (App.Div.1999), aff'd, 163 N.J. 38, 747 A.2d 262 (2000)).]
We discern, therefore, that plaintiff's argument is actually an invocation of the discovery rule, recognized in Lopez v. Swyer, 62 N.J. 267, 300 A.2d 563 (1973), or the doctrine of "equitable tolling." See Villalobos v. Fava, 342 N.J.Super. 38, 50, 775 A.2d 700 (App.Div.), certif. denied, 170 N.J. 210, 785 A.2d 438 (2001). The discovery rule delays the accrual of a cause of action "until the injured party discovers, or by an exercise of reasonable diligence and intelligence should have discovered that he [or she] may have a basis for an actionable claim." Lopez, supra, 62 N.J. at 272, 300 A.2d 563. The doctrine of equitable tolling, though similar to the discovery rule, is slightly different. It may be available "when a plaintiff is misled ... and as a result fails to act within the prescribed time limit." Villalobos, supra, 342 N.J.Super. at 50, 775 A.2d 700 (citations omitted).
To avail himself of the equitable nature of the discovery rule, plaintiff needed to "show that he could not through reasonable diligence and intelligence have discovered a basis for his claim" against Von Schalscha. Id. at 48, 775 A.2d 700. Equitable tolling would apply only if plaintiff demonstrated that he "`ha[d] been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass.'" Id. at 50, 775 A.2d 700 (quoting Dunn v. Borough of Mountainside, 301 N.J.Super. 262, 280, 693 A.2d 1248 (App. Div.) (in turn quoting Irwin v. Dept. of Veterans Affairs, 498 U.S. 89, 96, 111 S.Ct. 453, 458, 112 L.Ed.2d 435, 444 (1990)), certif. denied, 153 N.J. 402, 709 A.2d 795 (1998)). It is clear that plaintiff was not entitled to the application of either equitable remedy.
Plaintiff contends that Von Schalscha's name did not appear in any of the discovery in the criminal case, and that he "was not made aware of" the officer throughout depositions taken of the other defendants, which were "avoided" until July 2008. However, plaintiff admits that he did not seek the records of the police department until May, 2008, after the statute of limitations expired. Plaintiff never explains why he did not seek the court's assistance to depose defendants if their avoidance was deliberate or repetitive. There is nothing in the record that suggests defendants induced or tricked plaintiff. In short, we find no basis to reverse the judge's decision to deny plaintiff's request to amend his complaint.
Affirmed in part; reversed in part; remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.
NOTES
[1] Peppas was also indicted for fourth-degree obstruction, N.J.S.A. 2C:29-1.
[2] We note in passing that PTI is available "irrespective of whether the defendant contests his guilt of the charge or charges against him." N.J.S.A. 2C:43-12(g). Since the issue has not been raised, we specifically decline to decide whether it was proper to condition defendant's admittance into PTI upon a requirement that he first pled guilty to a crime. Additionally, since the issue was not raised, we do not consider whether defendant's factual basis sufficed for a finding of guilt under N.J.S.A. 2C:29-2(a)(2).
[3] In his brief, plaintiff also contends that defendants "specifically waived" the "reasonableness argument." We discern that he means defendants waived any claim that the force they used to arrest him was reasonable and not unlawfully excessive. Defendants' appellate brief makes it clear that they did not, and do not intend, to waive this defense, which, as we note below, necessarily requires detailed factual findings. In any event, the issue was never raised before the motion judge and we decline to consider it on appeal. See Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234, 300 A.2d 142 (1973).
[4] We discuss those circuit court opinions below.
[5] For purposes of our decision, we need not consider the requirement imposed by Rubin, supra, that a plaintiff in a malicious prosecution civil action need establish innocence of the criminal charges in order to prove a favorable termination. 248 N.J.Super. at 83, 590 A.2d 249; accord Freeman v. State, 347 N.J.Super. 11, 27, 788 A.2d 867 (App.Div.) ("The inquiry into whether a termination was favorable focuses on whether it was dispositive as to the accused's innocence of the crime for which they were charged."). (citing Rubin, supra, 248 N.J.Super. at 83, 590 A.2d 249), certif. denied, 172 N.J. 178, 796 A.2d 895 (2002); but see Geyer v. Faiella, 279 N.J.Super. 386, 395, 652 A.2d 1245 (App.Div.) (holding that the grand jury's refusal to indict is a favorable disposition for purposes of a civil malicious prosecution complaint), certif. denied, 141 N.J. 95, 660 A.2d 1194 (1995); Fleming v. United Parcel Serv. Inc., 273 N.J.Super. 526, 530-31, 642 A.2d 1029 (App.Div.) (holding that dismissal of the criminal charges because of a Constitutional violation is a favorable disposition), certif. denied, 138 N.J. 264, 649 A.2d 1285 (1994), cert. denied, 516 U.S. 847, 116 S.Ct. 139, 133 L.Ed.2d 85 (1995).
[6] Requiring reimbursement of counsel fees to board of education employees if "any criminal or quasi-criminal action ... result[s] in a final disposition in favor of" the employee. N.J.S.A. 18A:16-6.1.
[7] Hendrix was decided after the parties' briefs were filed and after the case was argued before us. We note that Rule 32.1 of the Federal Rules of Appellate Procedure, does "not prohibit or restrict the citation of federal judicial opinions, orders, judgments, or other written dispositions that have been: (i) designated as `unpublished,' `not for publication,' `non-precedential,' `not precedent,' or the like; and (ii) issued on or after January 1, 2007."
[8] Notably, the Court refused to consider the plaintiff's belated claim that "findings validating his damages claims would not invalidate his conviction" because it was only raised in his reply brief. Heck, supra, 512 U.S. at 480 n. 2, 114 S.Ct. at 2369 n. 2, 129 L.Ed.2d at 390 n. 2. Thus, the Court only considered "whether money damages premised on an unlawful conviction could be pursued under § 1983." Ibid.
[9] Plaintiff has brought to our attention an unreported case from the District Court that specifically held that Heck did not bar the plaintiff's claim of excessive force despite his earlier guilty plea to resisting arrest under N.J.S.A. 2C:29-2(a)(3)(a). See Owens v. City of Atl. City, 2008 WL 4205797, at *1-2, 2008 U.S. Dist. LEXIS 68021, at *3 (D.N.J. Sept. 8, 2008).
[10] The Fifth Circuit has expressed differing views on the subject. Compare Wells v. Bonner, 45 F.3d 90, 95 (5th Cir.1995) (refusing to grant summary judgment on the plaintiff's § 1983 claim of excessive force despite an unimpaired conviction for resisting a search) with Hainze v. Richards, 207 F.3d 795, 798 (5th Cir.) (holding that a § 1983 claim for excessive force "is barred as a matter of law if brought by an individual convicted of aggravated assault related to the same events") (footnote omitted), cert. denied, 531 U.S. 959, 121 S.Ct. 384, 148 L.Ed.2d 296 (2000).
[11] In this regard, the Hendrix court distinguished another unreported district court case, Garrison v. Porch, 2007 WL 776799, 2007 U.S. Dist. LEXIS 17223 (D.N.J. March 9, 2007). Although the Garrison court concluded that the plaintiff's claim of excessive force was barred by Heck, the Hendrix court noted that the plaintiff in that case admitted to using force against the arresting officers and pled guilty to the charge of assault. Hendrix, supra, 2009 WL 5205996, at *12-13, 2009 U.S. Dist. LEXIS 120718, at *38.
[12] It does not appear that the judge relied upon any of the discovery that had taken place, but rather granted the motion specifically by applying the legal principles as he interpreted them. The limited transcript of plaintiff's deposition that is part of the appellate record does not elucidate the exact circumstances giving rise to plaintiff's claim that defendants continued to attack him after he was in their custody. In his brief, he alleges that he was "maced" after he was handcuffed, and that defendants "took him outside to the parking lot and continued to beat, knee and kick him all the way to the patrol car."
[13] We decline to consider defendants' argument that plaintiff's common law claims are barred by N.J.S.A. 59:5-2(b)(3) (immunizing public entities and employees from claims "for any injury caused by [ ] a person resisting arrest or evading arrest"). Although raised in defendants' brief on appeal, the issue was only first raised in their reply brief to plaintiff's opposition to the motion to dismiss. It was not considered by the judge below. In any event, we believe whether the immunity applies is dependent on the particular facts presented. We will not consider the question based upon the scant factual record that exists on appeal.