747 A.2d 262

ANNA GALLAGHER AND THOMAS GALLAGHER, H/W, PLAIN-TIFFS–RESPONDENTS, v. BURDETTE–TOMLIN MEMORIAL HOSPITAL; ALEXANDER M. PAGNANI, M.D.; GENE J. BRA-GA, M.D.; PAGNANI–BRAGA UROLOGIC ASSOCIATES, P.A.; ROBERT STEEB, M.D.; WEST JERSEY HOSPITAL SYS-TEMS,—VOORHEES DIVISION; SOUTH JERSEY RADIOLOGY ASSOCIATES; W. WEISBERG, M.D.; CAPE EMERGENCY PHY-SICIANS; MARK J. TODT, M.D.; ROBERT J. MARO, M.D.; JOHN DOES 1 TO 3; AND JOHN DOES ASSOCIATES (BUSI-NESS ENTITIES) 1,2,3 AND 6, DEFENDANTS, AND HOWARD R. GOLDSTEIN, M.D.; NEIL PHILLIPS, M.D.; AND UROLOGI-CAL PROFESSIONAL ASSOCIATION, DEFENDANTS–APPEL-LANTS.

Argued November 8, 1999—Decided February 16, 2000.

*Melvin Greenberg,* argued the cause for appellants (*Greenberg Dauber Epstein & Tucker* and *Stahl & DeLaurentis,* attorneys).

*Gregory P. Saputelli,* argued the cause for respondents (*Obermayer, Rebmann, Maxwell & Hippel,* attorneys; *Mr. Saputelli* and *Kimberly D. Sutton,* on the brief).

*William L. Gold,* argued the cause for *amicus curiae* Association of Trial Attorneys–New Jersey (*Brown & Gold,* attorneys; *Mr. Gold* and *Abbott S. Brown,* on the brief).

*Herbert J. Stern,* submitted a brief on behalf of *amicus curiae* The Medical Society New Jersey (*Stern & Greenberg,* attorneys).

The opinion of the Court was delivered by

O'HERN, J.

This case, like *Mancuso v. Neckles,* 163 *N.J.* 26, 747 *A.*2d 255 (2000), also decided today, involves the application of the discovery rule to a claim of medical malpractice that would otherwise be barred by the statute of limitations. The principles that we apply are set forth in that opinion. Briefly stated, this case involves surgery that was undertaken to alleviate a woman's incontinence problem. The treatment resulted in a debilitating condition of health. Anna Gallagher has been made totally incontinent. At the time of these proceedings, she was under constant care to alleviate her condition.

I

The question is whether the malpractice of certain of the patient's doctors brought about the bad result and whether she had timely filed a claim against them. The alleged deviations from accepted standards of care involved treatment of a post-operative infection that developed into an abdominal abscess due to the lack of timely antibiotic therapy. The injury allegedly evolved as the result of a two-week delay in the treatment of the infection. The facts are more fully set forth in the reported opinion of the Appellate Division, 318 *N.J.Super.* 485, 723 *A.*2d 1256 (App.Div.1999). Here is the time line of the events:

| Date | The Medical Procedures or Legal Steps Taken | The Indicators to the Patient of Fault or Neglect of a Treating Doctor |
|---|---|---|
| May 1994 | Drs. Pagnani and Braga (the surgical team) perform the Marshall–Marchetti–Krantz procedure to alleviate the patient's problem of incontinence. Within days of being discharged, the patient goes to the | None |

| | emergency room with bleeding, fever, chills and an elevated blood count. | |
|---|---|---|
| August 4, 1994 | Experiencing continued pain, the patient consults the surgical team that diagnoses her with "acute low back syndrome" and suggests the patient consult an orthopedist. | None |
| Late August 1994 | Experiencing continued pain, the patient consults Drs. Maro and Todt (the family doctors). They admit her to the hospital and consult with Drs. Phillips and Goldstein (the after-care urologists) who order several tests, including a CT-scan that is read by Dr. Steeb. | None |
| August 24, 1994 | Dr. Steeb reports the presence of osteomyelitis, an inflammation of the bone in the surgical area. This was the infection that was allegedly left untreated by the patient's after-care physicians. | None as to the after-care urologists. |
| September 7, 1994 | The patient continues to experience pain and has difficulty walking. The after-care urologists re-admit the patient to West Jersey Hospital. Another CT-scan is ordered. | The CT-scan discloses a large abscess alerting the patient that something had gone drastically wrong. |
| September 8, 1994 | The after-care urologists explore the surgical area and drain a large, infected abscess. Cultures of the drainage uncover three types of bacterial infection that the after-care urologists treat with a six-week course of antibiotic medication. | None. |
| May 1995 | The patient files suit against the surgical team, Burdette–Tomlin Medical Hospital and various John Doe defendants. | |
| September 1995 | The patient's experts furnish reports indicating malpractice by the surgical team and the emergency room physicians for failure to diagnose the developing abscess. The experts also assert that Dr. Steeb failed to detect the abscess in the August 1994 CT-scan. | The patient amends her complaint to add Dr. Steeb as a defendant. |

| October 1997 | Dr. Jacobs, a defense expert for Dr. Steeb, was deposed. The expert asserts that the August 1994 CT-scan revealed osteomyelitis that required treatment by the patient's after-care urologists. | The expert's allegations of fault alert the patient that her after-care urologists may have committed malpractice by not treating the osteomyelitis. |
| December 1997 | The patient is granted leave to amend her complaint to join the after-care urologists, Drs. Goldstein and Phillips [1]. The after-care urologists move to dismiss the complaint as untimely. | |

The trial court denied the after-care urologists' motion for summary judgment and allowed the patient to invoke the discovery rule based on the delayed opinion of Dr. Jacobs. The Appellate Division affirmed the decision of the trial court concluding that plaintiff "had absolutely no reason to question Drs. Goldstein and Phillips until Dr. Jacobs testified in October of 1997. She acted promptly thereafter.... [As a result,] the belated opinion of Dr. Jacobs warranted [plaintiff's] invocation of the discovery rule." *Gallagher, supra,* 318 *N.J.Super.* at 500, 723 *A.*2d 1256.

## II

As explained in *Mancuso v. Neckles,* also decided today, for discovery rule purposes, the justification for a delayed claim

---

[1] The patient was also allowed to amend her complaint to add the family doctors, Dr. Maro and Dr. Todt. During her deposition, expert Dr. Jacobs specifically expressed the opinion that the after-care and treatment of the patient by Dr. Maro and Dr. Todt was inadequate because they failed to treat the infectious osteomyelitis that Dr. Steeb identified in his August 24, 1994 report. While she did not specifically name Drs. Goldstein and Phillips, Dr. Jacob's opinion alerted the patient that Drs. Goldstein and Phillips' concurrent failure to treat the infection may have further contributed to the patient's problems.

will depend on the "type of case" involved. 163 *N.J.* at 34, 747 *A.*2d 260 (quoting *Vispisiano v. Ashland Chem. Co.,* 107 *N.J.* 416, 434, 527 *A.*2d 66 (1987)). This "type of case" involving medical causation demands special attention due to the intrinsic hardship facing a potential medical malpractice claimant in determining fault. The patient here had no reasonable basis to suspect that her crippling condition was caused by anything other than the original surgery. "Not only is the nature of the injury generally unclear, its very existence is frequently masked." *Vispisiano, supra,* 107 *N.J.* at 434, 527 *A.*2d 66.

Defendant insists that *Baird v. American Medical Optics,* 155 *N.J.* 54, 713 *A.*2d 1019 (1998), created a new bright-line discovery rule for medical malpractice cases that starts the statute of limitations running for all potentially responsible parties when a patient knows that she has been injured and knows or has reason to know that someone has probably been at fault. Defendant relies on the language in *Baird:* "The discovery rule prevents the statute of limitations from running when injured parties reasonably are unaware that they have been injured, or, although aware of the injury, do not know that the injury is attributable to the fault of another." *Id.* at 66, 713 *A.*2d 1019. We disagree that that generic statement was ever intended to mean that statutes of limitations could not run at different times for different defendants. An example will suffice to explain. Let us assume that a patient suffered a poor result from a knee replacement and started a suit against the surgeon for malpractice. Assume that more than two years after the initial surgery, the patient undergoes corrective surgery at which time it is discovered that an object was left in her knee by one other than the surgeon whom she had sued. Would such a claim be precluded by the language of *Baird?* We think not.

We agree with the court below that plaintiff exercised "reasonable diligence and intelligence" in asserting her claim. *Lopez v. Swyer,* 62 *N.J.* 267, 272, 300 *A.*2d 563 (1973). The benefit of the discovery rule should be available to this plaintiff who remained

reasonably "unaware ... that the injury [wa]s due to the fault or neglect of an identifiable individual or entity." *Abboud v. Viscomi*, 111 *N.J.* 56, 62, 543 *A.*2d 29 (1988) (citing *Vispisiano, supra*, 107 *N.J.* at 426–27, 527 *A.*2d 66). No readily apparent indication of Drs. Phillips and Goldstein's potential contribution to the patient's medical deterioration materialized until Dr. Jacobs brought the failure to treat plaintiff's infection to light. Competent experts retained by her did not express any opinion on the care and treatment of plaintiff provided by Drs. Phillips and Goldstein.

The unfairness of denying plaintiff leave to amend her complaint was compounded in this case by the discovery posture taken by the initial defendants. Plaintiff filed suit in May 1995. Defendants pleaded by way of answer that others than they had caused plaintiff's injuries. Plaintiff promptly demanded, by way of interrogatories, to know the basis of those allegations. Defendants furnished no reasonable medical support for their contentions. Dr. Jacobs' report, furnished before the statute of limitations had expired, made no mention of the fault of the after-care physicians. Not until the statute of limitations had passed did Dr. Steeb's expert suggest the fault of the after-care physicians. Invoking the principles of *Young v. Latta*, 123 *N.J.* 584, 589 *A.*2d 1020 (1991) (that require parties seeking to diminish their share of fault to "give prompt notice"), the trial court reasoned that it would be especially unfair to deny plaintiff the benefit of the discovery rule. Unlike a products-liability action in which one potentially responsible party may seek contribution from a jointly responsible party, it is almost never the case that one physician will seek contribution from another. Had Dr. Steeb, within the period of limitations, sought contribution from the after-care physicians as third-party defendants, Anna Gallagher could have asserted a timely claim against them under the "relating back" principles of *Rule* 4:9–3. Although plaintiff's ability to establish the actual fault of Drs. Phillips and Goldstein will depend on the proofs to be offered at trial, she should be given the opportunity to explore their potential liability as a cause of her injuries.

We affirm the Appellate Division judgment upholding the trial court's dismissal of defendants' motion for summary judgment.

*For affirmance*—Chief Justice PORITZ and Justices O'HERN, GARIBALDI, STEIN, COLEMAN and VERNIERO—6.

*Opposed*—None.