**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0779-17T2

SALVANELY NUNEZ,

    Plaintiff-Appellant,

v.

RUTGERS UNIVERSITY MEDICAL
SCHOOL, ROBERT WOOD JOHNSON
UNIVERSITY HOSPITAL, RUTGERS
ROBERT WOOD JOHNSON MEDICAL
GROUP, and DR. RACHANA TYAGI,
M.D.,

    Defendants-Respondents.

_____

Argued March 6, 2019 – Decided May 24, 2019

Before Judges Alvarez and Nugent.

On appeal from Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-1899-17.

James D. Martin argued the cause for appellant (Martin Kane Kuper, LLC, attorneys; James D. Martin, on the brief).

Brett J. Haroldson, Deputy Attorney General, argued the cause for respondents (Gurbir S. Grewal, Attorney

General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Daniel M. Vannella and Daveon M. Gilchrist, Deputy Attorneys General, on the brief).

PER CURIAM

This appeal involves a claim against a public entity and thus must comply with the provisions of the Tort Claims Act (TCA), N.J.S.A. 59:1-1 to 12-3. Plaintiff Salvanely Nunez appeals from a September 15, 2017 order denying her motion for reconsideration of the judge's earlier decision refusing to grant her leave to file a late notice of claim pursuant to N.J.S.A. 59:8-9. We now reverse.

The following facts are drawn from the certifications of the parties. Nunez, a non-English speaker, was born with scoliosis, which became significantly exacerbated after a serious car accident and the birth of her twin daughters, causing her severe pain and difficulty breathing. Defendant Rachana Tyagi, M.D., an employee of defendant Rutgers University Medical School-Robert Wood Johnson University Hospital, performed surgery on March 24, 2016, assuring Nunez it would alleviate her pain and ease her breathing. When Nunez awakened from the surgery, she immediately experienced more not less pain, and had neither movement nor sensation in her left leg.

A-0779-17T2

Tyagi assured plaintiff that a second surgical procedure would resolve the problem, explaining that a small group of patients required more extensive procedures. Tyagi performed a second surgery on May 12, 2016.

After the surgeries, Nunez underwent months of physical rehabilitation, and physical and occupational therapy. She never regained the use of her leg, is now incontinent, and is wheelchair bound. During the months following the two procedures, she was administered high doses of morphine and oxycodone for pain and anti-depressants. Her parents and other family members traveled to this country to assist with the care of her toddlers. Through and until November 2016, Tyagi remained optimistic that Nunez's significantly worsened condition would correct itself.

At the end of October, a social worker with whom Nunez was acquainted urged her to consult with an attorney. That lawyer explained he was not interested in her case, and that if the potential defendants were state employees, a TCA notice would have to be filed within ninety days. Nunez claims she had not known Tyagi was a state employee.

A second social worker with whom Nunez was acquainted advised her to consult with another attorney. That attorney referred Nunez to present counsel.

A-0779-17T2

Present counsel met with her March 22, 2017, and immediately filed a late notice of claim and a motion for leave to file a late notice of claim.

Tyagi explains that Nunez was not provided with an interpreter because she had a boyfriend who translated for her. Tyagi also recalled explaining to Nunez that because she was a state employee, the type of insurance Nunez had would cover her medical expenses. Tyagi also points out that the English-language consent to surgery form Nunez signed explains the treatment is provided by New Jersey Rutgers-Robert Wood Johnson Medical School staff.

The judge ruled against Nunez on the motion for reconsideration[1] because he considered the accrual date to have been when the first surgery occurred in March 2016. He reasoned that when Nunez awakened to find she had lost movement and sensation in her left leg, she should have known that the medical care she received was negligent. In his view, Tyagi's statement to Nunez that additional surgery would resolve the problem "provides clear notice that something was amiss." Additionally, the judge did not consider Nunez's physical condition created extraordinary circumstances that allowed for a filing beyond the ninety days after her first surgery. As he put it, if he would permit

---

[1] We were not provided with the transcript of the initial decision denying Nunez the right to file a late notice of claim.

A-0779-17T2

it in Nunez's case, "this rule would carry no weight" if "she and every other claimant were permitted to toll the statute of limitations as they suffer from complications." He did not reach the issue of substantial prejudice because he denied the motion. In his September 15, 2017 written statement of reasons following those he orally rendered, although sympathetic to Nunez's plight, he explained that "allowing the [p]laintiff to toll the statute of limitations would make the rule pointless because every medical malpractice plaintiff deals with a similar level of complications."

I.

We do not disturb the factual findings of a trial judge unless "they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice[.]" D'Agostino v. Maldonado, 216 N.J. 168, 182 (2013) (quoting Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011)). In contrast with findings of fact, a trial judge's interpretation of the law is always reviewed de novo. Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

The TCA establishes the general immunity of public entities from tort liability. Ben Elazar v. Macrietta Cleaners, Inc., 230 N.J. 123, 133 (2017). The TCA requires claimants to serve public entities and public employees with a

notice within ninety days of the accrual of a cause of action.  N.J.S.A. 59:8-3; N.J.S.A. 59:8-8(a).

"The first task is always to determine when the claim accrued." Beauchamp v. Amedio, 164 N.J. 111, 118 (2000).  Generally, a claim accrues "on the date on which the underlying tortious act occurred."  Ben Elazar, 230 N.J. at 134 (citing Beauchamp, 164 N.J. at 117).

The discovery rule may toll the date of accrual.  Beauchamp, 164 N.J. at 118.  "The discovery rule tolls the commencement of the ninety-day notice period only '[u]ntil the existence of an injury (or, knowledge of the fact that a third party has caused it) is ascertained.'"  McDade v. Siazon, 208 N.J. 463, 475 (2011) (quoting Beauchamp, 164 N.J. at 122).  "[T]he accrual date is tolled from the date of the tortious act or injury when the injured party either does not know of his injury or does not know that a third party is responsible for the injury." Ben Elazar, 230 N.J. at 134 (citing McDade, 208 N.J. at 475).  Thus, even if the claimant is aware that he or she is injured but does not know the injury is attributable to another, "the discovery rule tolls the date of accrual as to that unknown responsible party."  Id. at 134-35.

The critical inquiry is "whether the facts presented would alert a reasonable person, exercising ordinary diligence, that he or she was injured due

6

to the fault of another. The standard is basically an objective one-whether plaintiff 'knew or should have known' of sufficient facts to start the statute of limitations running." Caravaggio v. D'Agostini, 166 N.J. 237, 246 (2001) (quoting Baird, 155 N.J. at 72). The discovery rule also applies to the notice requirement; the ninety-day period for filing a notice of claim is tolled "until the injured party learns of the injury or of the third party's responsibility for that injury." Ben Elazar, 230 N.J. at 135.

N.J.S.A. 59:8-9 governs late notices of claim:

> A claimant who fails to file notice of his claim within 90 days as provided in section 59:8-8 of this act, may, in the discretion of a judge of the Superior Court, be permitted to file such notice at any time within one year after the accrual of his claim provided that the public entity or the public employee has not been substantially prejudiced thereby. Application to the court for permission to file a late notice of claim shall be made upon motion supported by affidavits based upon personal knowledge of the affiant showing sufficient reasons constituting extraordinary circumstances for his failure to file notice of claim within the period of time prescribed by section 59:8-8 of this act or to file a motion seeking leave to file a late notice of claim within a reasonable time thereafter . . . .

We review the judge's decision denying reconsideration of his refusal to allow the filing of a late notice of claim for abuse of discretion. McDade, 208 N.J. at 476-77. In this case, the judge mistakenly applied his discretion when

he found Nunez's cause of action accrued after the first surgery and she had not demonstrated that extraordinary circumstances existed to justify the filing of a late notice of claim.

The Supreme Court has recognized that cases "involving medical causation demand[] special attention due to the intrinsic hardship facing a potential medical malpractice claimant in determining fault." Gallagher v. Burdette-Tomlin Mem'l Hosp., 163 N.J. 38, 43 (2000). This case illustrates the point.

Here, following the first surgery, Tyagi assured plaintiff that a second surgical procedure would resolve the problem, explaining that a small group of patients required more extensive procedures. Based on the doctor's representation, Nunez could not have reasonably believed Tyagi, or anyone else for that matter, was at fault for causing what was represented to be, in some cases, a condition requiring more than one surgery to alleviate. She undoubtedly would have obtained a second opinion regarding her worsened medical condition if she had any reason to believe Tyagi was responsible for the symptoms following her first surgery.

The same analysis might apply to the injuries that Nunez suffered following the May 12, 2016 surgery. We need not reach that issue, however,

because Nunez's physical and mental debilitation following that surgery constitute extraordinary circumstances, beyond the norm, if there is one, of those who allege their treatment provider has committed medical malpractice and seek to file a late notice of claim. Prior to surgery, Nunez was at least mobile, if in pain. After the second procedure, she lost the use of one leg, became incontinent, and became wheelchair bound. Throughout, she was the single caretaker of toddlers, and required the assistance of her family even though it meant they had to temporarily leave their own country. Additionally, because of pain, she was administered morphine, oxycodone, and anti-depressants, in addition to engaging in futile efforts at rehabilitation.

Certainly, N.J.S.A. 59:8-9 "commits the authority to grant a plaintiff's motion for leave to file late notice 'to the sound discretion of the trial court, and [its decision] will be sustained on appeal in the absence of a showing of an abuse thereof.'" D.D. v. Univ. of Med. & Dentistry of New Jersey, 213 N.J. 130, 147 (2013) (quoting Lamb v. Global Landfill Reclaiming, 111 N.J. 134, 146 (1988)). "Courts faced with applications for leave to file a late notice of claim, therefore, must proceed with their evaluation mindful of the Legislature's direction that the proofs demonstrate circumstances that are not merely sufficient, but that they instead be extraordinary." Id. at 149. "[I]n engaging in the analysis of

extraordinary circumstances, the court's focus must be directed to the evidence that relates to plaintiff's circumstances as they were during the ninety-day time period[.]" Id. at 151.

While the statute does not define the term extraordinary circumstances, "the meaning to be ascribed to that term has been developed on a case-by-case basis." Rogers v. Cape May Cty. Office of Pub. Def., 208 N.J. 414, 428 (2011). "[A] plaintiff's ignorance of the ninety-day deadline or counsel's inattention or administrative shortcomings do not constitute extraordinary circumstances." Ibid. (citing Zois v. N.J. Sports & Exposition Auth., 286 N.J. Super. 670, 674 (App. Div. 1996)).

"[E]xtraordinary circumstances have been found where a plaintiff had no reason to know a public employee had injured him." Ibid. (citing Lowe v. Zarghami, 158 N.J. 606, 629-30 (1999)). "Extraordinary circumstances have also been found where an attorney was understandably confused over the law regarding accrual as it pertained to the filing of notice." Ibid. (citing Beauchamp, 164 N.J. at 123). The Supreme Court has found extraordinary circumstances where a plaintiff did not file a timely notice of claim because she was unaware that the defendants at a private hospital were public employees,

but had otherwise diligently pursued the claim. Lowe, 158 N.J. at 629-31; see also Eagan v. Boyarsky, 158 N.J. 632 (1999).

"Published authority from our Appellate Division has generally concluded that medical conditions meet the extraordinary circumstances standard if they are severe or debilitating." D.D., 213 N.J. at 149. "The consistent theme of these decisions is the severity of the medical condition and the consequential impact on the claimant's very ability to pursue redress and attend to the filing of a claim." Id. at 150.

We are satisfied that plaintiff's extreme situation constituted extraordinary circumstances because it had an "impact on the claimant's very ability to pursue redress and attend to the filing of a claim." See ibid. Nunez had no reason to suspect she had been injured by a third party at least until after the second surgery, and then no doubt was rendered immobile by her physical condition and depression. These were extraordinary circumstances.

Motions for reconsideration should be granted where the prior decision overlooked law or evidence or otherwise was mistaken. Cummings v. Bahr, 295 N.J. Super. 374, 384 (App. Div. 1996). In this case, it was a misapplication of discretion for the judge to have refused reconsideration. It was a misapplication of this discretion for the judge to have denied leave for late filing initially.

Because the judge ruled against Nunez in deciding the issue of the accrual date and extraordinary circumstances, no ruling was made as to substantial prejudice. The record on appeal indicates none. We remand the matter, vacate the orders denying Nunez's motions to file a late notice of claim and for reconsideration, and remand for the filing of a complaint, answers, discovery, and trial. That the State did not raise the issue of substantial prejudice in a fashion we can discern from this record indicates that they are not taking that position and do not believe substantial prejudice would result from the filing of the late notice of claim.

Reversed and remanded.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION