**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0868-19T1

THE ESTATE OF RENE
MELENDEZ, JR., through
its Administratrix JANINE
MELENDEZ,

      Plaintiff-Respondent,

v.

NEW JERSEY TURNPIKE
AUTHORITY,

      Defendant-Appellant,

and

THE NEW JERSEY DEPARTMENT
OF TRANSPORTATION and
THE STATE OF NEW JERSEY,

      Defendants.

_____

        Argued telephonically May 18, 2020 –
        Decided June 30, 2020

        Before Judges Ostrer, Vernoia and Susswein.

On appeal from the interlocutory orders of the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-4784-19.

Thomas A. Abbate argued the cause for appellant (De Cotiis FitzPatrick Cole & Giblin LLP, attorneys; Thomas A. Abbate and Amy E. Shotmeyer, of counsel and on the briefs).

Joseph Michael Cerra argued the cause for respondent (Lynch Lynch Held Rosenberg, PC, attorneys; James S. Lynch and Joseph Michael Cerra, on the brief).

PER CURIAM

Defendant New Jersey Turnpike Authority (NJTA) appeals from an order finding plaintiff, The Estate of Rene Melendez, Jr., timely served its notice of tort claim on the NJTA in accordance with the requirements of the New Jersey Tort Claims Act (TCA), N.J.S.A. 59:1-1 to 59:12-3, and an order denying the NJTA's motion to dismiss the complaint based on plaintiff's alleged failure to timely serve its notice of tort claim. Having considered the parties' arguments in light of the applicable legal principles, we affirm the court's orders.

I.

We derive the salient facts, which are not disputed, from the record before the motion court. At just after 4:30 p.m. on September 2, 2018, a van driven by thirty-six-year-old Rene Melendez, Jr. struck "the head of the guardrail" separating the entrance ramps to two roadways at a toll plaza on the New Jersey

2

Turnpike. The initial New Jersey State Police Crash Investigation Report describes the accident as a "single motor vehicle crash" into a "fixed object," namely "the guardrail end separating the entrance ramps for Interstate 78 West Express and Local travel lanes."[1]

The report further states there were no known "[a]pparent [c]ontributing [c]ircumstances" to the occurrence of the accident, including any apparent road or environmental factors or defects in any "[c]ontrol [d]evices," that were discovered by the State Police.[2] The report describes that Melendez's vehicle's first and most "harmful" impact was with a "[g]uard[r]ail [e]nd." The report form provided the State Police with the option to identify an "[i]mpact

---

[1] In its brief on appeal, the NJTA refers to, and relies on, what it characterizes as the "initial" police report, which it includes in its appendix. The report, entitled "New Jersey State Police Crash Investigation Report" is annexed as Exhibit G to plaintiff's counsel's certification in support of plaintiff's motion for an order finding plaintiff timely served its notice of tort claim against the NJTA. Counsel's certification does not make express reference to the report, but the parties do not dispute it constituted the State Police initial report of the accident.

[2] We discern this information from the coded portions of the report. Block "118a" of the report is completed with numerical designation "00," which reflects there were no known "[a]pparent [c]ontributing [c]ircumstances" found related to the accident, including any circumstances related to road or environmental factors or defects in any control devices. See https://www.state.nj.us/transportation/refdata/accident/pdf/NJTR-1_Overlays.pdf (Last visited June 7, 2020).

A-0868-19T1

[a]ttenuator" or "[c]rash [c]ushion" as a point of impact, but the report makes no mention of either as having been involved in Melendez's accident.[3] Melendez's vehicle ignited after impact, and he was pronounced dead at the scene.

Because Melendez's death was the result of a single vehicle accident, his widow and the administratrix of his estate, Janine Melendez, did not believe there was any basis to file suit against anyone. A few weeks after the accident, however, a relative looked at Melendez's vehicle, reported to Janine Melendez "the steering column was pushed upward," and recommended she consult with counsel about that issue.

On October 3, 2018, she first spoke with counsel about whether there was a potential claim against the vehicle manufacturer related to a possible defect in

---

[3] We again discern this information from the coded portions of the report. Blocks "126a" through "126d" detail the sequence of events in a single vehicle accident. See https://www.state.nj.us/transportation/refdata/accident/pdf/NJTR-1_Overlays.pdf (Last visited June 7, 2020). Block "126e" provides for the identification of the "[m]ost [h]armful [e]vent" identified during the investigation. Ibid. The State Police entered code "47" in Block 126a and Block 126e. Code 47 refers to a collision with a "[g]uide [r]ail [e]nd." Ibid. Thus, based on their initial investigation, the State Police concluded Melendez first collided with a guide rail end and that collision was the most harmful event. Under the codes listed and available, "41" describes a collision with an "[i]mpact [a]ttenuator" or "[c]rash [c]ushion." Ibid. The initial report makes no mention of either being involved in Melendez's accident.

A-0868-19T1

the steering column of the vehicle. Her counsel retained an investigator, who reported on or about October 10, 2018, that he had been advised by a New Jersey State Trooper the State Police "were investigating whether, after a prior accident at that spot, the guardrail had been damaged and not repaired." According to plaintiff's counsel, his receipt of the investigator's report "was the first time" he believed there might be "a claim against a governmental entity due to the condition of the guardrail." According to plaintiff's counsel, the potential claim was not that the guardrail "caused or contributed to the accident"; instead, the potential claim was that the alleged defective condition of the guardrail "caused or contributed to the severity of . . . Melendez's injuries."

On November 6, 2018, plaintiff served a notice of tort claim on the New Jersey Attorney General's Office advising of potential claims against the NJTA and the New Jersey Department of Transportation (NJDOT).[4] The notice asserted, in pertinent part, that the NJTA and NJDOT failed to maintain or repair a dangerous condition in the guardrail and failed to warn of the dangerous condition.

---

[4] The notice of tort claim also identified the Newark Fire Department as a party that plaintiff alleged proximately caused Melendez's injuries and death.

By letter dated December 4, 2018, the New Jersey Department of the Treasury notified plaintiff's counsel that the NJTA is a public entity separate and distinct from the State, and, as a result, the State could not "entertain [plaintiff's] claim" against the NJTA. The letter included an opinion that notice to the State did not constitute notice to the NJTA under the TCA.

On December 12, 2018, plaintiff's counsel sent a second notice of tort claim, this time directly to the NJTA and NJDOT. In a March 27, 2019 letter, the NJTA's third-party administrator denied plaintiff's claim, asserting the accident occurred on September 2, 2018; plaintiff's notice of tort claim was received on December 13, 2018; and the notice was untimely because it was not served within ninety days of the accident as required under N.J.S.A. 59:8-8.

On June 27, 2019, plaintiff filed a complaint against the NJTA and NJDOT, asserting survivorship and wrongful death causes of action. The complaint alleged the NJTA's failure to repair or install the "guardrail system and its impact attenuators" created a dangerous condition that caused or contributed to Melendez's injuries and death. In its answer, the NJTA asserted as an affirmative defense that plaintiff failed to serve a timely notice of tort claim as required by N.J.S.A. 59:8-8.

A-0868-19T1

Plaintiff subsequently filed a motion for a determination that it timely served the NJTA with the notice of tort claim or, in the alternative, for leave to file a late notice of tort claim in accordance with N.J.S.A. 59:8-9. The NJTA filed a cross-motion to dismiss the complaint due to plaintiff's alleged failure to serve a timely notice of claim.

On September 13, 2019, the court entered an order granting plaintiff's motion and determining plaintiff's December 12, 2018 notice of tort claim "was properly and timely served" on the NJTA under N.J.S.A. 59:8-8. The court also entered an order denying the NJTA's cross-motion to dismiss the complaint.

The NJTA appealed from the orders. We subsequently determined the court's order finding plaintiff's notice of tort claim was timely served was not a final order allowing an appeal as of right, see R. 2:2-3(a), but we granted the NJTA leave to appeal from the order. We also directed that the motion court provide a statement of reasons for its orders in accordance with Rule 2:5-6(c).

In a subsequent written decision, the motion court explained that N.J.S.A. 59:8-8 requires service of a notice of tort claim within ninety days of the date of accrual of the action. The court found plaintiff could not have discovered a possible defect in the guardrail may have contributed to Melendez's injuries until October 10, 2018, when plaintiff's counsel's investigator reported what the State

A-0868-19T1

Police investigator had learned about possible prior damage to the guardrail.[5]

The court concluded October 10, 2018 was the date of accrual of plaintiff's claim against the NJTA and service of the notice of tort claim–sixty-two days later, on December 12, 2018, was timely under N.J.S.A. 59:8-8.[6]

On appeal, the NJTA presents the following arguments for our consideration:

> POINT ONE
>
> THE LOWER COURT ERRED IN DETERMINING THAT RESPONDENT'S CLAIM ACCRUED ON OCTOBER 10, 2018 AND WAS THUS PROPERLY AND TIMELY SERVED ON THE [NJTA].

---

[5] It can be reasonably inferred plaintiff's counsel's investigator obtained the information between October 3, 2018, and October 10, 2018 because plaintiff's counsel was not retained until October 3, 2018, and his investigator reported what the State Police investigation revealed about the guardrail on October 10, 2018.

[6] The court's September 13, 2019 order granting plaintiff's motion for a determination the notice of tort claim was timely did not grant plaintiff's alternative request for leave to file a late notice of tort claim pursuant to N.J.S.A. 59:8-9. In its statement of reasons, however, the court found in the alternative that counsel's October 2018 discovery of the "pre-existing condition of the guardrail" was an extraordinary circumstance permitting the late filing of the notice of tort claim under N.J.S.A. 59:8-9. As we explain, we do not address plaintiff's alternative request for leave to file a late notice of tort claim, or the motion court's finding plaintiff demonstrated exceptional circumstances permitting a late filing under N.J.S.A. 59:8-9, because we are convinced the court correctly determined plaintiff's notice was timely under N.J.S.A. 59:8-8.

POINT TWO

THE MOTION JUDGE ABUSED HIS DISCRETION IN DETERMINING THAT THE FACTS DEMONSTRATE EXTRAORDINARY CIRCUMSTANCES SUFFICIENT TO EXCUSE THE LATE CLAIM NOTICE.

II.

The determination of the accrual date of a tort claim under the TCA is a legal issue solely within the province of the court. See Beauchamp v. Amedio, 164 N.J. 111, 118-19 (2000) (noting the "sequential analysis" undertaken by a court "to determine when the claim accrued"). Where, as here, the court determined the accrual date based on its interpretation "of the law and the legal consequences that flow from established facts," we review its conclusions de novo. Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

The TCA governs the liability of public entities in tort. Ben Elazar v. Macrietta Cleaners, Inc., 230 N.J. 123, 133 (2017). "As a prerequisite to proceeding with a tort claim against a public entity, a plaintiff must file a notice of claim within ninety days of the accrual of the cause of action." Ibid. (citing N.J.S.A. 59:8-8). A plaintiff may file a late notice of claim within one year of the accrual of a claim, provided a court finds there is a showing of extraordinary

circumstances and the public entity has not been substantially prejudiced. Ibid. (citing N.J.S.A. 59:8-9); see also O'Donnell v. N.J. Tpk. Auth., 236 N.J. 335, 345-47 (2019). The failure to file within ninety days, or within one year under extraordinary circumstances, bars the claimant from bringing the tort claim against the public entity. N.J.S.A. 59:8-8(a).

An assessment of whether a claimant has filed a timely notice of tort claim within the ninety days prescribed by N.J.S.A. 59:8-8 requires a determination of "the date on which the claim accrued." Ben Elazar, 230 N.J. at 133-34; see also Beauchamp, 164 N.J. at 118-19 (explaining the "first task" in assessing whether a plaintiff has served a timely notice of tort claim is "determin[ing] when the claim accrued"). "Generally, in the case of tortious conduct resulting in injury, the date of accrual will be the date of the incident on which the negligent act or omission took place." Beauchamp, 164 N.J. at 117. There is, however, an "exception to that well[-]established notion of accrual . . . where the victim either is unaware that he [or she] has been injured or, although aware of an injury, does not know that a third party is responsible." Ibid.

"The discovery rule is [therefore] part and parcel of such an inquiry" concerning the timeliness of service of a notice of tort claim "because it can toll the date of accrual." McDade v. Siazon, 208 N.J. 463, 475 (2011) (quoting

Beauchamp, 164 N.J. at 118-19). The discovery rule is grounded in "the unfairness of barring claims of unknowing parties," Caravaggio v. D'Agostini, 166 N.J. 237, 245 (2001) (quoting Mancuso v. Neckles, 163 N.J. 26, 29 (2000)), and it prevents the running of a limitations period where "injured parties reasonably are unaware that they have been injured, or, although aware of an injury, do not know that the injury is attributable to the fault of another," id. at 245-46 (quoting Baird v. Am. Med. Optics, 155 N.J. 54, 66 (1998)). Under the "rule, the accrual date [under N.J.S.A. 59:8-8] is tolled from the date of the tortious act or injury when the injured party either does not know of his [or her] injury or does not know that a third party is responsible for the injury." Ben Elazar, 230 N.J. at 134.

Our Supreme Court has recognized two categories of cases in which the discovery rule applies. Caravaggio, 166 N.J. at 246. The first includes "those who do not know that they have been injured." Ibid. The second includes "those who know they have suffered an injury but do not know that it is attributable to the fault of another." Ibid.

"The question in a discovery rule case is whether the facts presented would alert a reasonable person, exercising ordinary diligence, that he or she was injured due to the fault of another." Ibid. The applicable standard is

A-0868-19T1

objective–"whether [the] plaintiff 'knew or should have known' of sufficient facts to start the [limitations period] running." Ibid. (citation omitted).

The NJTA argues plaintiff's claim accrued as a matter of law on September 2, 2018, the day of Melendez's accident. It asserts the court erred by applying the discovery rule and finding the claim against the NJTA accrued on October 10, 2018, the day plaintiff's counsel was first informed by his investigator the State Police were investigating whether a prior accident at the same location caused damage to the guardrail that had not been repaired. The NJTA contends plaintiff's counsel's certification could not support the tolling of the accrual date because it is based on the hearsay report of counsel's investigator. The NJTA also asserts that even if the facts in counsel's certification are true, plaintiff failed to demonstrate its claim accrued on October 10, 2018. We are not persuaded.

Melendez's injuries and death resulted from the collision of his vehicle into a guardrail. There is no evidence other vehicles were involved in the accident or the guardrail in any manner caused the collision. Indeed, plaintiff makes no claim the guardrail contributed to the occurrence of the accident. Plaintiff's claim is based on the assertion that the guardrail constituted a

dangerous condition that contributed to Melendez's injuries and death because it had been damaged in a previous accident and not repaired by the NJTA.

Contrary to the NJTA's assertion, plaintiff's claim against the NJTA did not accrue on September 2, 2018, simply because the accident occurred on that date. See Ben Elazar, 230 N.J. at 134. To be sure, Melendez's injuries and death were immediately known on September 2, 2018, but the record is devoid of any evidence that on that date "the facts presented would [have] alert[ed] a reasonable person, exercising ordinary diligence" that Melendez's injuries and death were "due to the fault of" the NJTA. Ben Elazar, 230 N.J. at 134 (quoting Caravaggio, 166 N.J. at 246). That is, there is no evidence related to the accident that would have immediately suggested to a reasonable person exercising ordinary diligence there had been a prior accident at the same location that left the guardrail system in a defective state of disrepair. Indeed, the State Police's initial investigation, which we can infer was performed with reasonable diligence, did not uncover any evidence there was a prior accident at the guardrail and a failure to repair any resulting damage. The report reflects the initial investigation revealed no apparent contributing circumstances to the occurrence of the accident and no apparent road or environmental factors or defects in any control devices.

We do not suggest a State Police investigation report is dispositive of a claimant's obligation to exercise the reasonable diligence required to determine who is at fault for an accident or injuries. See Iaconianni v. N.J. Tpk. Auth., 236 N.J. Super. 294, 297 (App. Div. 1989) (explaining reasonable diligence before invocation of the discovery rule requires more than "a mere reading of the police report"). However, under the circumstances presented, the report shows plaintiff, through an exercise of reasonable diligence, could not have determined on September 2, 2018, there had been a prior accident at the same location that caused damage to the guardrail that the NJTA failed to repair. Thus, plaintiff's claim did not accrue on September 2, 2018, because although it was aware of Melendez's injuries and death on that date, it did not know, nor could it have, his injuries and death were attributable to the fault of the NJTA. See Caravaggio, 166 N.J. at 245-46.

Because plaintiff's claim did not accrue on the date of Melendez's accident, we apply the discovery rule and must determine when plaintiff was first presented with "facts [that] would alert a reasonable person, exercising ordinary diligence, that" Melendez's injuries were the fault of the NJTA. See Ben Elazar, 230 N.J. at 134 (quoting Caravaggio, 166 N.J. at 246). This does not require that plaintiff have "knowledge of a specific basis for legal liability

or a provable cause of action." Caravaggio, 166 N.J. at 246. The "knowledge of fault for purposes of the discovery rule has a circumscribed meaning: it requires only the awareness of facts that would alert a reasonable person exercising ordinary diligence that a third[-]party's conduct may have caused or contributed to the cause of the injury . . . ." Savage v. Old Bridge-Sayreville Med. Grp., PA, 134 N.J. 241, 248 (1993) (emphasis in original).

The record shows that on October 10, 2018, plaintiff first became aware of facts attributing possible fault to the NJTA for Melendez's injuries and death on September 2, 2018. On that date, plaintiff's counsel's investigator reported information gleaned from the State Police concerning a possible defect in the guardrail. The investigator's disclosure of the State Police investigation of a possible prior accident involving the guardrail, and the NJTA's failure to repair any resulting damage, constituted the first disclosure of facts attributing any possible fault for Melendez's injuries and death to the NJTA. Plaintiff's tort claim against the NJTA therefore accrued on October 10, 2018.

The NJTA argues that our decision in Iaconianni requires a determination that plaintiff's claim accrued on the accident date. In Iaconianni, two tractor-trailers collided while travelling in the northbound lanes of the New Jersey Turnpike and crashed through a guardrail. 236 N.J. Super. at 295-96. One of

the trucks struck a vehicle traveling in the southbound lanes and caused the death of the vehicle's driver. 236 N.J. Super. at 296.

We reversed a trial court order permitting the late filing of a notice of claim against the NJTA. Id. at 295. We reasoned the wrongful death and survivorship claims asserted on behalf of the vehicle's driver accrued on the accident date and there was no basis to toll the accrual date under the discovery rule. Id. at 297-98. We found that although there was conflicting evidence concerning the condition of the guardrail, there was no dispute that the "guardrail was implicated in the accident" and it "was apparent to three other attorneys representing three other plaintiffs within [ninety] days of the accident that the guardrail may not have performed its anticipated purposed by not preventing the tractor[-]trailers from crossing over into the southbound traffic lanes." Id. at 297. We concluded the plaintiff's counsel, through the exercise of reasonable diligence, could have discovered the plaintiff had an actionable claim against the NJTA prior to the filing of its untimely request to file a late notice of tort claim. Ibid.

The circumstances pertinent to Melendez's accident share little in common with those presented in Iaconianni. In Iaconianni, it was immediately apparent the guardrail may have contributed to the accident and injuries because, as we

16

noted in our decision, the intended purpose of the guardrail was to prevent the trucks from crossing over into the southbound lanes. Id. at 297. Thus, on the day of the accident, the plaintiff's injuries were known and it should have been known the NJTA may have been at fault—for using and maintaining guardrails that did not serve their intended purpose—for the accident and resulting injuries.

In contrast, the NJTA's putative fault in Melendez's accident was neither immediately apparent nor suggested in any manner by the circumstances surrounding the occurrence of this accident. Instead, the basis for the NJTA's fault was hidden in the rubble–the apparent failure to repair the guardrail after it was damaged in a prior accident. Unlike in Iaconianni, the discovery rule tolled the accrual date of plaintiff's claim because plaintiff did not know on the day of accident, nor could it have known through the exercise of reasonable diligence, that the NJTA may have been at fault for Melendez's injuries and death.

We reject the NJTA's assertion the motion court could not properly rely on plaintiff's counsel's certification because it contained hearsay statements from the State Police to the investigator and the investigator to plaintiff's counsel. The NJTA argues the hearsay statements did not constitute competent evidence supporting plaintiff's motion for a determination the notice of tort

claim was timely filed or opposing the NJTA's cross-motion to dismiss the indictment. The statements included in counsel's certification were not presented for the purpose of establishing their truth and did not constitute inadmissible hearsay under the circumstances presented. See N.J.R.E. 801(c); see also State v. Long, 173 N.J. 138, 152 (2002) (explaining a statement is not hearsay if it "is not offered for the truth of the matter asserted").

The statements attributed to the investigator were presented solely to establish when plaintiff, through its counsel, first learned the NJTA may be at fault for Melendez's injuries and death following his vehicle's collision with the guardrail. Regardless of the truth of the investigator's statements, they provided a basis for a person exercising reasonable diligence to conclude the NJTA may be a fault. That information, which was properly conveyed in plaintiff's counsel's affidavit, supported the court's determination plaintiff's claim against the NJTA first accrued on October 10, 2018.

Plaintiff's claim accrued on October 10, 2018, and its second notice of claim, which was served on the NJTA, was timely served within the ninety-day period required by N.J.S.A. 59:8-8.[7] The court correctly granted plaintiff's

---

[7] The motion court did not address plaintiff's assertion that service of the November 6, 2018 notice of tort claim on the Attorney General's Office

motion for a determination the notice of claim was timely filed and denied the

NJTA's motion to dismiss the complaint.

Our determinations render it unnecessary to consider whether the court

also correctly concluded plaintiff was entitled to file a late notice of tort claim

under the standard provided in N.J.S.A. 59:8-9.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

---

constituted proper, and therefore timely, service on the NJTA in accordance with
N.J.S.A. 59:8-10. We reject the argument because N.J.S.A. 59:8-10(a)
"provides the manner in which the claim is to be served upon that entity," and
does not define "the entity upon which the notice of claim must be filed."
Feinberg v. State, 265 N.J. Super. 218, 224 (App. Div. 1993), rev'd on other
grounds, 137 N.J. 126 (1994). N.J.S.A. 59:8-7 specifies where a notice of tort
claim must be served and, in pertinent part, requires that notice of a claim against
a "local public entity" "shall be filed with that entity." The NJTA is a local
public entity under the TCA because it is an independent authority that may sue
or be sued, see N.J.S.A. 27:23-5(d), and it does not fall within the TCA's
definition of "State," see N.J.S.A. 59:1-3; see also Feinberg, 265 N.J Super. at
222-23. In accordance with N.J.S.A. 59:8-7, plaintiff was required to serve its
notice of tort claim directly with the NJTA, and its service of the November 6,
2018 notice on the Attorney General's Office did not satisfy the TCA's
requirements. N.J.S.A. 59:8-7.

A-0868-19T1